In the Matter of the Accounting of FIRST TRUST AND DEPOSIT COMPANY, as Trustee and Administrator of the Estate of GEORGE BAUSCH, Deceased, Appellant.

CARL L. BAUSCH et al., Respondents.

Fourth Department, January 16, 1946.

*H. Duane Bruce* and *Henry H. Bruce* for appellant.

*James G. Dale* for respondents.

LARKIN, J.  George Bausch, a resident of Onondaga County, died there January 3, 1929.  He left a will dated August 10, 1928, with a codicil of September 9, 1928.  The codicil named First Trust and Deposit Company of Syracuse (herein called Trust Company) executor and trustee.  Decedent's distributees were his widow and four adult children.

On January 9, 1929, the Trust Company filed a petition in the Surrogate's Court of Onondaga County, seeking to probate the will and codicil.  Three of the children filed objections to

the codicil, claiming that their father lacked testamentary capacity to make it. The widow indicated an intention of filing similar objection to the probate of the will. In addition, the children seemed to have intended to question their mother's right to certain securities which their father had transferred to her in his lifetime. Apparently the probate proceeding remained dormant for some time, during which the widow and her children negotiated. On April 29, 1929, they made a compromise agreement, by which decedent's property was to be administered and distributed. This agreement recited that all the parties were satisfied that decedent lacked testamentary capacity to make either the will or codicil. It made provision for the distribution of decedent's property in accordance with its terms, whether either will or codicil, or both, were admitted to probate. It further provided that, in the event both instruments were denied probate, the Trust Company should be appointed administrator. The distributees granted and transferred to the Trust Company, as trustee, all their title and interest in the realty and personalty which decedent owned in his lifetime, including whatever rights they acquired under the will and codicil, except certain shares of stock in the George Bausch Optical Company, which, by the same agreement, the widow and three of the children assigned and transferred to Robert E. Bausch, the other distributee. Included in the property placed in trust were the securities valued at $26,000, which the mother had claimed by transfer from her husband in his lifetime. In the compromise agreement she surrendered any claim of individual ownership of them and restored them to the estate.

By the terms of the compromise the Trust Company was directed to secure to the widow the use and occupancy of decedent's residence in the city of Syracuse, for her life, with the right to use the income from the proceeds of its sale, if the house were sold, with her consent, before her death; to pay decedent's debts, including the expenses of administration; to pay to one of his daughters $1,500; to pay to the widow during her life the income from decedent's personal property; and, at the death of the widow, to sell the real estate, if it had not been previously sold, and then to divide among decedent's four children, in equal shares, all that remained of his estate, real and personal. To a considerable extent the compromise agreement followed the pattern of the will and codicil.

Thereafter, pursuant to the then section 24 of the Personal Property Law and section 73 of the Real Property Law, now section 19 of the Decedent Estate Law, all the distributees and the Trust Company joined in a petition to the surrogate of Onondaga County, seeking the approval of this compromise. The petition set forth the reasons why it should be approved. They were, the doubts as to the testamentary capacity of decedent on the dates of the will and codicil, and the fact that by the compromise threatened litigation between the parties over the securities transferred by decedent to his wife in his lifetime, of the value of about $26,000, was settled, and by such settlement that amount was added to decedent's estate. Petitioners asked that their agreement for the distribution of decedent's estate be approved; that the will and codicil be denied probate; that the Trust Company be appointed administrator of decedent's estate, and directed it to settle and distribute it in accordance with the compromise. The Trust Company made itself a party to this petition, to the extent that it consented to have the matters submitted to the surrogate, reciting that it believed the allegations of fact to be true, except as to the lack of testamentary capacity, which it did not admit. Since, by the will, codicil and compromise agreement, grandchildren *in esse et posse* might be contingently interested, a citation was issued returnable May 31, 1929. On the return day the surrogate appointed a special guardian for all of the infant grandchildren, *in esse et posse,* and for persons unknown.

Subsequently the special guardian filed his report approving the compromise and the surrogate's proposed order of approval subsequently made. On July 15, 1929, the surrogate made an order authorizing and directing the Trust Company, named as executor and trustee in decedent's codicil to his will, to adjust, by compromise, the controversies of the different claimants to decedent's estate, in the manner provided by the compromise agreement of April 29, 1929. He also directed the special guardian to adjust by compromise in similar manner. He approved the compromise agreement, and made it binding upon all those interested in decedent's estate, whether known or unknown. He consolidated the proceeding for the probate of the will and codicil with the proceeding for the compromise, and decreed that in the event all the parties, including the Trust Company, stipulated that decedent was incompetent to make the will and codicil, a decree could be entered denying their probate, and directing the issuance of letters of administration

to the Trust Company, by which decree it would be directed to administer and distribute the estate of decedent in accordance with the compromise agreement of April 29, 1929. This stipulation as to the lack of testamentary capacity of decedent not having been filed, the matter was brought on for hearing on July 22, 1929. Testimony was then taken as to decedent's competency at the time he executed both instruments. The surrogate, from this testimony, found that decedent lacked testamentary capacity on both dates, and, denying probate of the two instruments, adjudged that Bausch died intestate. He further decreed that, pursuant to the petition of the distributees, and of the Trust Company, the latter was appointed administrator of the estate of decedent, and directed to administer, settle and distribute the estate in accordance with the provisions of the agreement of April 29, 1929, both as administrator and trustee thereunder. On the following day the usual letters of administration were issued to the Trust Company. Upon its appointment as administrator the Trust Company took possession of decedent's estate, and still has possession of it, not having yet been discharged.

In 1930, with the consent of the widow, the home which she and decedent had occupied, and of which she had the life use under the will, codicil and compromise agreement, was sold by the Trust Company. The latter filed an intermediate account of its proceedings as administrator and trustee in the Surrogate's Court of Onondaga County in 1931. This account was duly judicially settled by the Surrogate's decree of March 3, 1931. Another intermediate account was similarly settled by the Surrogate's decree of November 15, 1937.

In March, 1944, the widow died, leaving a will, which was admitted to probate and letters testamentary issued to her two executors. Thereafter, since, by the terms of the compromise agreement, the Trust Company was required, on her death, to distribute decedent's property among her children, it began a proceeding in the Surrogate's Court of Onondaga County, in which it sought, finally, to account as administrator and trustee, to distribute in accordance with the agreement, and to be discharged. The four children and the executors of the widow appeared specially, raising the objection that the Surrogate's Court of Onondaga County was without power to settle the account presented to it because the account was one of a trustee of a trust *inter vivos*.

Thereafter, by petition, the Trust Company began the instant proceeding in the Supreme Court of Onondaga County, by which

it sought a determination of the question of jurisdiction. While theoretically it sought a final settlement of its account as administrator and trustee, it sought that relief conditionally because it asked the court to determine that the Surrogate's Court of Onondaga County had jurisdiction to settle its account, and that, in the event that it should be determined that the Surrogate's Court and the Supreme Court of Onondaga County had concurrent jurisdiction, the Supreme Court decline jurisdiction because the Surrogate's Court had already assumed jurisdiction of the estate in question. The Special Term decided that the Surrogate's Court of Onondaga County did not have jurisdiction to settle the account of the Trust Company, because the account involved the administration and settlement of an *inter vivos* trust. It denied petitioner's motion that it decline jurisdiction, and directed that the matter be heard in the Supreme Court, making an order of reference to an attorney of that court to examine and audit the account, and to hear and determine all questions arising upon the settlement of it which the Supreme Court had power to determine, and to make his report to the court. It is from that order that this appeal has been taken.

At the outset of any further discussion it is important to note that the Special Term did not refuse to remand the matter to the Surrogate's Court of Onondaga County, on the theory that both that court and the Supreme Court had jurisdiction of the accounting, but solely because the Special Term reached the conclusion that the Surrogate's Court of Onondaga County was *without* jurisdiction to make a final settlement of the Trust Company's account.

Again, it is essential to keep in mind that the respondents herein do not question the jurisdiction of the Surrogate's Court of Onondaga County when that court, in 1929, after a petition for the probate of decedent's will and codicil had been filed with it, and objections had been made, and were to be made, in the probate proceedings, made the orders approving the compromise agreement, directing the Trust Company as executor named in the codicil, and the special guardian appointed by the surrogate, to make themselves parties to the compromise agreement, the decree denying the probate of the will and codicil, adjudging that Bausch died intestate. and appointing the Trust Company administrator of his estate, with directions to administer and settle the estate in accordance with the terms of the compromise agreement.

The single question which seems to be involved herein is whether the compromise agreement is such an *inter vivos* trust that it, when it became operative, fell outside the surrogate's jurisdiction. This trust had plenty of, if not all, the earmarks of an *inter vivos* one. As soon as the testamentary instruments were denied probate, and decedent adjudged to have died intestate, the widow and her four children became the sole distributees of all of decedent's property, real and personal, subject only to the payment of his debts, death taxes and expenses of administration. Concededly, if, instead of entering into a compromise agreement, the contest of the will and codicil had proceeded to a final determination in favor of contestants, with the result that decedent died intestate, and had the distributees, after the appointment of an administrator, who, having taken possession of the estate, had paid the debts, death taxes and expenses of administration, then made an agreement dividing the property among themselves as they saw fit, setting up a trust for the widow, in all respects similar to the one herein created, and had, in that agreement, stipulated for the entry of a decree discharging the administrator without further accounting, there probably would be little question but that such a trust was an *inter vivos* one, over which the surrogate, the administrator, his officer, having been discharged, by the consent of the distributees, would have had no jurisdiction. (*Matter of Baruch,* 176 Misc. 344, determined on the authority of *Matter of Lyon,* 266 N. Y. 219.) Under the foregoing assumption the trust would have been created by competent adults, who owned property coming to them by intestacy, and the ultimate disposition of which was no concern of the surrogate, once his administrator had performed his duties and had been discharged.

But that is not what this family did. The record which they made must be taken as it is found. They did not remove the decedent's estate from the jurisdiction of the surrogate. On the contrary they left it under his jurisdiction to be administered, settled and distributed by the administrator, an officer of that court. Implicit in the very compromise agreement approved by the Surrogate was the impossibility of this fiduciary, so appointed by the surrogate, being finally discharged from the obligations imposed upon it by the order of the surrogate, until the death of the widow made possible a final distribution of decedent's estate. Bearing in mind that the agreement approved by the surrogate contemplated the disposition of decedent's property in accordance with the terms of that agreement,

whether Bausch died testate or intestate, it seems quite evident that even though, in one sense, the trust created may be said to be an *inter vivos* one, still it smacks of a testamentary one. Analyzed, the compromise agreement actually made over decedent's will and directed the disposition of his estate in accordance with it, as a substituted will.

From all that has already been stated it seems clear that the authorities upon which the respondents herein rest their case — *Matter of Lyon* (266 N. Y. 219); *Matter of Miller* (257 N. Y. 349); *Tracy* v. *Danzinger* (249 App. Div. 46; *Matter of Kraetzer* (147 Misc. 609); *Matter of Ihmsen* (161 Misc. 789); *Matter of Schroder* (176 Misc. 1024) and *Matter of Baruch* (176 Misc. 344) are readily distinguishable. Of these authorities, *Matter of Lyon* (*supra*) is typical. There, a trust was created by a mother, of her own property, with her daughter as trustee. The mother died first. The daughter died some years later, without finally accounting for her stewardship. The sole question involved was whether the mother's trust estate became a part of the daughter's estate, to be administered by the daughter's legal representatives. It was there held that section 40 of the Surrogate's Court Act gave no jurisdiction to the Surrogate's Court of the county in which the daughter's will was probated to entertain an application made by two distributees of the mother's estate to compel the executors of the daughter's estate to account for the daughter's conduct as trustee under the agreement made by the mother with the daughter. The basic reason for the decision was that the mother's property was never held by the daughter in any capacity other than as trustee, so that, on the daughter's death, the trust estate did not become any part of the daughter's estate. The transactions involved were considered solely the affairs concerning a trustee and *cestui que trust*, and not in any sense the affairs of a decedent within the meaning of section 40 of the Surrogate's Court Act. The essence of the decision is found in the last paragraph of the opinion which states " that the allegations of the petition negative the idea of the existence of any affairs of a decedent in respect to this trust which the petitioners expressly set forth." Not so with the compromise here involved, which, from beginning to end, and indeed until the final distribution of the trust estate, relates solely to the affairs of a decedent.

Taking the foregoing view of the present situation, the conclusion seems proper that, both by section 40 and subdivision 13 of section 20 of the Surrogate's Court Act, the surrogate

of Onondaga County having once taken jurisdiction of this estate, and, so, having been authorized by the statutory provisions of the Real and Personal Property Laws then in force, now section 19 of the Decedent Estate Law, to approve this compromise agreement, did not lose jurisdiction because the trust created by the agreement has the earmarks of an *inter vivos* one, but rather, under the express provisions of the Surrogate's Court Act his jurisdiction continued until the agreement ends, by the final distribution of the estate. While, concededly, a Surrogate's Court is one of limited jurisdiction, and substantially has only such powers as the Legislature may grant to it (N. Y. Const., art. VI, § 13) still both by section 40 and subdivision 13 of section 20 of the Surrogate's Court Act, it retained control of this estate, with full authority to consider the final accounting of the fiduciary which it named to carry out the agreement which it had approved, to the end that the fiduciary may be discharged of its trust. At the time of the adoption of present section 13 of article VI of the Constitution in 1925, both the foregoing provisions of the Surrogate's Court Act were statutory law. Merely because the Trust Company had, long since, performed all the duty which strictly as administrator it was required to perform, and because this present accounting, in which it seeks a final discharge, relates to its conduct as a trustee of whatever may be considered an *inter vivos* trust, still the Surrogate's Court of Onondaga County is not divested of jurisdiction.

Passing, next, to the disposition of this appeal, attention has already been called to the fact that jurisdiction of this accounting was taken by the Supreme Court, not on the theory that both it and the Surrogate's Court of Onondaga County had concurrent jurisdiction, but solely because the Special Term determined that the Surrogate's Court did not have jurisdiction because it was an accounting by a trustee of an *inter vivos* trust. The conclusion having been reached, on the consideration of this appeal as herein indicated, that no matter what was the character of the trust created by the compromise approved by the surrogate, his jurisdiction continued until decedent's estate was entirely distributed, the thought seems inescapable that jurisdiction was erroneously assumed, in this accounting proceeding, by the Supreme Court. That is so, whether the Supreme Court and the Surrogate's Court of Onondaga County both have jurisdiction. The usual rule applicable to situations where two courts have concurrent jurisdiction, namely, that the first one assuming jurisdiction should retain it to the exclusion

of the other, should have been applied. (*Schuehle* v. *Reiman,* 86 N. Y. 270, 273; *Evans* v. *Appell,* 211 App. Div. 105, affd. 240 N. Y. 585; *Cody* v. *Neid,* 213 App. Div. 846; *Schmidt* v. *King,* 222 App. Div. 712, affd. 247 N. Y. 578.)

The order should be reversed on the law and as a matter of discretion, with $10 costs and disbursements payable out of the estate, and the motion should be granted, with $10 costs payable out of the estate, declining jurisdiction and remitting the proceeding to the Surrogate's Court of Onondaga County to proceed with the accounting.

All concur. Present — TAYLOR, P. J., HARRIS, LARKIN and LOVE, JJ.

Order reversed on the law and as a matter of discretion, with $10 costs and disbursements payable out of the estate, and motion granted, with $10 costs payable out of the estate, declining jurisdiction and remitting the matter to the Surrogate's Court of Onondaga County to proceed with the accounting.