William T. Collins, S.
There are a number of questions before the court in this estate, each of them the subject of a *200 separate unconsolidated proceeding. The applications are mutually dependent and center around the effect to be given to a ‘ ‘ buy-out ’ ’ agreement between the decedent and his son. They will be dealt with here singly in the sequence of their submission.

The Issue as to Domicile.

The decree admitting deceased’s will to probate specifically reserved for later determination the question of his domicile. Upon the proof adduced at the hearing devoted to this matter, the court finds overwhelming and uncontradicted evidence to establish the fact that he died a resident of this State, and so holds.

The Issue as to the Right of Election.

In the proceeding instituted by the executors under section 145-a of the Surrogate’s Court Act, they have moved for an order granting judgment on the pleadings determining that the provisions of the will in her favor defeat the exercise of an election on the part of the widow to take her intestate share of the estate (Decedent Estate Law, § 18).
The testamentary directions bearing upon the question of the widow’s right to elect are here set forth in full:
“ Second: I hereby give and bequeath to my wife, Hannah G-alewitz, the sum of Two Thousand and Five Hundred ($2,500) Dollars, absolutely and I hereby direct that this legacy be paid in full as a preferred legacy. * * *.
“ Third: (a) In the event my said wife survive me, and provided she be my wife at the time of my death, I hereby give, devise and bequeath one-third part of all the rest, residue and remainder of my estate, real, personal, mixed, wherever the same may be situate, including any and all property in which I have any interest, and including any property over which I have any power of testamentary disposition, to my executors and trustees hereinafter named, In Trust, nevertheless, to have and to hold the same during the lifetime of my said wife, and to invest, and reinvest, and keep the same invested, and to pay the net income thereof to my said wife for and during the term of her life. * * *.
‘' Sixth : The provisions contained in this Last Will and Testament for my said wife shall be in lieu of dower or of any other interest in my estate or in any property owned by me or in which I have an interest at the time of my death, and in bar of her right of election to take against this Last Will and Testament under the provisions of the New York Decedent Estate Law or otherwise.”
*201 Mrs. Galewitz attacks these bequests for statutory inadequacy upon the theory that they are so qualified by article Sixth as to require her, as a condition to their enjoyment, to surrender rights which she asserts against the estate as a creditor and others which are reserved to her under section 200 of the Surrogate ’s Court Act. If this were found to be true there would be merit to her contention but nothing could be further from the fact. This court has previously held that the ‘ ‘ Buy-Out ’ ’ agreement is not one of the sort interdicted by the rule in Newman v. Dore (275 N. Y. 371) as an illusory transfer and thus an infringement upon her rights as the surviving spouse (Matter of Galewitz, 206 Misc. 218, affd. 285 App. Div. 947, motion for leave to appeal denied 285 App. Div. 1049). Her status as a creditor, if it can be shown to exist, is in no way affected by the direction that the legacy is “in lieu of dower or of any other interest in my estate or in any property owned by me or in which I have an interest at the time of my death ’ ’. This provision of the will would leave her free to assert her rights as a creditor without prejudice to her position as a legatee for such rights are not the equivalent of an “interest in the estate” of the sort to which the “ in lieu of ” condition is addressed. (Surrogate’s Ct. Act, § 314, subd. 10; Matter of Fischer, 282 App. Div. 367, mod. 307 N. Y. 149; Matter of Di Giacomo, 3 Misc 2d 16; Matter of Rich, 149 Misc. 843, affd. 242 App. Div. 613.) This is equally true, of course, so far as her rights under section 200 of the Surrogate’s Court Act are concerned for these are preserved to her by the statute independently of the operation of the will (Matter of Barton, 126 N. Y. S. 2d 780; Matter of Jackson, 177 Misc. 480, affd. 264 App. Div. 783; Matter of Miles, 131 N. Y. S. 2d 328).
The argument of the surviving spouse rests upon a hypothesis which is wholly inconsistent with the result which the will seeks to achieve. If the hypothesis is to be accepted then the testator must be presumed to have said — the bequest to my wife is limited to the minimum the law permits but for her to qualify for its enjoyment she must relinquish her rights as a creditor of my estate; if she declines to do so and attempts to enforce those rights then the bequest is nullified, her position as a creditor is recognized and, in addition, she will become eligible for an intestate share which is greater than the benefits I have provided for her under my will. The will is a carefully planned instrument completely free of self-defeating errors so gross as that which the widow insists it contains. This conclusion finds collateral support in the direction to the executors to discharge all of the testator’s lawful debts. The motion for judgment on the pleadings is granted.

*202
The Issue Involving the “ Buy-Out ” Option.

On May 14, 1947 deceased and his son Samuel, the owners of 500 and 250 shares, respectively, of the common stock of Clinton Paper Corporation entered into an agreement which conferred upon the survivor the option to purchase the stock owned by the first to die provided that notice of the election to do so was served upon the representative of the latter’s estate within 60 days of his appointment. It was agreed that the price would be the book value of the stock, as of the date of death, as determined by the audit of an accountant to be appointed by the probate court having jurisdiction over the administration of the estate of the deceased owner. Upon his father’s death Samuel served timely notice of his election to exercise the option under the agreement and thereafter moved to enforce specific performance. The validity of the agreement was challenged by the widow but sustained by this court in its decision reported (206 Misc. 218) and subsequently affirmed (285 App. Div. 947, motion for leave to appeal denied 285 App. Div. 1049).
The accountant appointed to determine the price of the stock in accordance with the formula fixed in the contract has filed his report and his findings are the subject of objections addressed to the audit by the petitioning son, on the one hand, and the executors, the widow and the special guardian of infants interested in the estate on the other. Further dispute has arisen in connection with the imposition and allocation of the tax attributable to the value of the stock as determined by the Director of Internal Revenue and there is also at issue the question of the respective rights of the estate, as against those of the son, to the profits earned by the corporation since the death of the testator.
The accountant appointed by this court to make the appraisal has fixed the value of the 500 shares as of the death of the testator at $660,790.13. The Director of Internal Revenue, however, rejected this figure and has declared in a notice of deficiency that the stock was worth $1,345,000.13, an increase of some $700,000 over the value returned by the executors. As a result, if the director’s finding is sustained, additional estate taxes of $350,-000 will be due and the question of how that tax is to be allocated as between the purchaser and the estate creates the initial issue for decision in the controversy over the contract.
When Samuel Galewitz agreed with his father to permit the survivor to purchase the stock of the first to die each became vested with inchoate rights as a creditor of the other’s estate. As events transpired it was Samuel whose rights as a creditor have been perfected for it is now the law of the case that he is entitled to compel the performance of his father’s promise and to *203 a judgment against the latter’s estate. As a creditor the law imposes no obligation upon him to contribute to the discharge of the seller’s obligation for estate taxes and he takes the stock free of any such charge (Matter of Brokaw, 180 Misc. 490, affd. 267 App. Div. 811, affd. 293 N. Y. 555; Matter of Strebeigh, 176 Misc. 381; Matter of Oppenheimer, 166 Misc. 522; Matter of Cordier, 1 Misc 2d 887; Matter of McKeon, 124 N. Y. S. 2d 590). The tax burden is apportioned only among the persons ‘ ‘ interested in the gross tax estate ” (Decedent Estate Law, § 124, subd. 1) and by definition, a creditor is not included within that category (Surrogate’s Ct. Act, § 314, subd. 10). The court holds accordingly that Samuel Galewitz will not be required as a creditor of the estate to contribute to the additional tax attributable to the excess in the value of the stock as determined by the Director of Internal Revenue as against the purchase price fixed in the agreement. As a legatee he will of course share the tax burden with the other persons interested in the estate.
The determination here made was not the result of a failure to recognize its possible tax consequence to the estate though that is a factor which the court cannot allow to influence its decision (Matter of Cromwell, 199 Misc. 143, affd. 278 App. Div. 649, affd. 303 N. Y. 681; Matter of James, 189 Misc. 24, affd. 274 App. Div. 917, motion for leave to appeal denied 274 App. Div. 927). There is, however, a line of authority which suggests that the determination of the Director of Internal Revenue fixing the so-called market price instead of the option price as the basis for the assessment of the tax is not unassailable in view of the fact that this court has decreed specific performance of the agreement. (See Brodrick v. Gore, 224 F. 2d 892, and cf. Hoffman v. Commissioner of Internal Revenue, 2 U. S. T. C. 1160, affd. sub nom. Giannini v. Commissioner of Internal Revenue, 148 F. 2d 285, and Estate of Matthews v. Commissioner of Internal Revenue, 3 U. S. T. C. 525.)
We come now to a consideration of the question as to which of the parties,. purchaser or seller, is entitled to the profits amounting to some $385,000 earned on the stock since the date of the testator’s death. The resolution of this issue will depend upon the construction of that part of the contract which fixed the time for the passage of title to the stock for under a contract to sell the question of when title is to pass is largely a matter of the parties’ intention as expressed in their agreement (Personal Property Law, §§ 99, 100; Sayour & Co. v. Stevens & Co., 205 Misc. 807; Donner v. Associated Lace Corp., 277 App. Div. 697, affd. 303 N. Y. 719).
*204 The agreement prescribing the method by which the price was to be determined required the appointment of an auditor by this court to ascertain the book value of the stock as of the death of the owner. Fixation of the price is an essential element of a contract to sell and until the time arrives when that element is supplied the agreement remains executory and title cannot pass. “ If such a condition exists, [i.e.— fixation of value by a third party] whether expressed or implied, it is obvious that no liability on the part of the seller can arise until the price is not only fixed by the valuation, but is also tendered.” (1 Williston on Sales [Rev. ed.], § 174, p. 449; see, also, Pfeiffer v. Berke, 121 N. Y. S. 2d 774.)
A rule corollary to that just stated preserves to the seller the benefits on the subject matter of the agreement, in this case the earnings on the stock, until the time of the actual passage of title (Williston, op. cit., § 301, p. 215; Benjamin on Sales, p. 412). Here, that will take place upon the tender of the purchase price by the buyer and its acceptance by the executors, an event which must await the disposition of this court of the objections to the report of the auditor.
The agreement provides that the initial payment is to be made within 30 days after the service of a copy of the auditor’s report upon the purchaser. To perfect the exercise of his option he is then required to pay 20% of the purchase price in cash and to deliver a series of promissory notes for the balance payable over a period of years in monthly installments. The contract further provides that until full payment is made the stock will remain registered in the name of the deceased on the books of the corporation and that all dividends declared and paid prior to final liquidation of the purchase price shall be applied in reduction of the outstanding balance. It is fruitless to argue, as the son does, that this provision has a retroactive effect which entitles him to all earnings subsequent to the date of his father’s death, for certainly no expression of such an intention is to be found in the agreement which speaks solely of the period subsequent to the fixation of the price. The court, therefore, holds that all earnings on the stock between the date of the father’s death and the actual tender and acceptance of the purchase price shall inure to the benefit of the estate.

The Motion to Modify and, as Modified, To Confirm the Report of the Auditor.

Objections addressed by each of the parties to the report of the accountant bring up for review findings reflected in the audit to determine the book value of the stock fixed as of the date of *205 the death of the testator. Only the son as petitioner, however, moves for confirmation of the report if modified by the adoption of his objections.
So that there shall be no doubt of the jurisdiction to adjudicate the issue framed by the motion, let it be made plain at the outset that the decree directing specific performance of the agreement, affirmed as it was by the Appellate Division, necessarily required the existence of such authority in this court as a basis for its action. Certainly, therefore, the questions created by the objections to the report fall clearly within the limits fixed by the Legislature in defining the court’s jurisdiction (Surrogate’s Ct. Act, § 40; Matter of Raymond v. Davis, 248 N. Y. 67) and, as a consequence, the Surrogate is empowered to see to it that thé audit by the accountant, acting by his appointment, conforms j;6 the ordinary stricture of the law of contracts (Matter of Bausch, 270 App. Div. 418; Aron v. Gillman, 309 N. Y. 157; Matter of Wohlstadter, 208 Misc. 566).
The first of the challenged findings relates to the valuation of a second mortgage owned by the Jay ton Realty Corporation, a wholly owned subsidiary of the Clinton Paper Corporation. Jay ton acquired the mortgage which covers premises owned by the Lafayette Astor Corporation, like itself a wholly owned subsidiary of Clinton, by purchase from the original owner for a consideration of $246,590.66 or some 20% less than its face value of $307,838.80. In determining the contract price of the Clinton stock, the auditor employed the full value rather than the cost to Jayton of the Lafayette Astor mortgage. In the absence of a finding of the existence of circumstances pointing to a different conclusion, realistic accounting procedure required the adoption of the value fixed by the accountant and the objection of the petitioner is accordingly overruled (Aron v. Gillman, supra).
It is true, however, that no reserve for income and franchise taxes attributable to the excess in the face value of the Lafayette Astor mortgage over its cost to the purchaser was employed in the evaluation of the Jay ton stock. Clearly, to reflect true book value, provision for the payment of taxes on the books of the owning corporation is required and a supplemental audit reflecting the creation of a reserve for this purpose is accordingly directed unless the widow, the special guardian and the executors will consent to a reduction of $26,900.71 in the valuation of the Jay ton stock, an amount equal to the sum which the petitioner contends is required to discharge its tax obligations (Aron v. Gillman, supra).
The objection of the executors, the widow and the special guardian to the creation of the reserve for taxes is based upon *206 their interpretation of the following provision in the agreement: “ (g) As part of, and in computing, the liabilities of the Corporation, any and all Federal, State and municipal taxes shall be included as liabilities for the purposes of this agreement at the amount stated on the records of the Federal, State, and municipal offices.”
Their argument is based upon the fact that at the time of the appraisal, no taxes were stated ‘ ‘ on the records of the Federal, State and municipal offices ”. The application of the rules enunciated in the decision of the Court of Appeals in the very recent case of Aron v. Gillman (309 N. Y. 157, supra) defeats the theory upon which the respondents rely. There the “ buy-out ” agreement fixed the purchase price at book value as “ determined by the most recent audit ”. Holding, over the objection of the defendant that values were to be fixed with reference to accrued tax liabilities though no reservation therefor appeared on the books of the corporation as shown by the “ most recent audit ”, the court said (p. 163):
“ It is well settled that in construing the provisions of a contract we should give due consideration to the circumstances surrounding its execution, to the purpose of the parties in making the contract, and, if possible, we should give to the agreement a fair and reasonable interpretation (3 Corbin on Contracts, pp. 78-79, 88-91, 115; 3 Williston on Contracts, pp. 1780-1788). In the instant case the parties attempted to arrange a method whereby the survivor should buy out the other’s interest in the corporation. At the execution of the agreement, no one knew which party would be the survivor, or at what time he would be obliged to purchase. The price was to be book value as determined by the most recent audit; but obviously in such a serious agreement involving the transfer of many thousands of dollars of stock, the parties must have intended by this provision to establish a fairly stable and predictable valuation basis.
“ The position maintained by defendants, however, namely, a complete ignoring of the income taxes until actually payable, would mean an arbitrary, capricious and widely fluctuating purchase price, depending on the time of the last audit. For example, if that audit took place one day before the taxes became payable, by defendants’ theory no income taxes at all should appear in the computation of book value. But if the audit should take place a few days later, book value would have suddenly dropped by an amount equal to the income taxes for the entire year. Such a result is manifestly unreasonable from both a practical and theoretical point of view.”
*207 Upon the authority of the Gillmcm decision and for the reasons heretofore stated objection (a) of the petitioner to the report of the accountant is sustained to the extent earlier announced.
The second of the objections addressed by the petitioning son to the report of the auditor is concerned with the failure to set up a reserve against possible corporate liabilities for income taxes for the period preceding the death of the testator inasmuch as Treasury Department audits for that period had not been completed at the time of the preparation of the report. The court is of the opinion that the liability is too nebulous within the limitations of this contract to justify the adoption of the position assumed by the petitioner and this objection is overruled. Unlike the tax obligation in connection with the LaFayette Astor mortgage which was shown to be susceptible of reasonably accurate appraisal, the liability for deficiencies in the payment of income taxes for periods for which returns had been filed is a risk the agreement requires the purchaser to assume.
The petitioner’s third objection to the report deals with the asserted failure of the accountant to interpret properly the following provision of the agreement: “(e) Any real property of the Corporation shall be taken as of the current assessed value thereof on the date of the death of the decedent as stated on the books of the City of New York, or if such property be outside the City of New York, then upon the books of the taxing authority of the locality wherein such real property is situated, less in all cases of a discount of twenty-five (25%) per cent from such value, and less any lien, mortgage or encumbrance thereon.”
Among the assets of Clinton is a parcel of real property situated in the city of Miami Beach, Dade County, Florida, assessed by the city at $116,800 and by the county at $97,000. The accountant employed the higher of these two figures as the base for the application of the formula prescribed by the agreement. Proper accounting procedure and the provision of the contract support the position adopted by the accountant and the objection of the petitioner is overruled.
The fourth and final objection of the petitioner relates to the values placed by the auditor upon notes due to Clinton from subsidiary corporations. The agreement contained a provision directing that “ earned accounts receivable shall be taken at the face value thereof at the date of the decedent’s death, less discount (if the accounts be carried gross upon the books), and less a further discount of 20% for depreciation.” It is the contention of the petitioner that notes of wholly owned subsidiaries, shown to have a face value of $595,000 are subject to the *208 operation of this provision of the agreement. Proper accounting practice requires that a distinction be made between “ notes receivable ” and “ accounts receivable ” and the contractual reference to the one has nothing to do with the other (Montgomery on Auditing Theory and Practice [5th ed.], p. 150). The objection is overruled.
The executors and the widow have interposed a separate objection to the report because of the accountant’s inclusion of a reserve in the amount of $50,222.04 for Federal income taxes computed “ on an annualized basis on the profit of each corporation.” A like objection is addressed to the reserves for New York State and city taxes. It is the theory of the objeetants that these taxes were not on the books of the respective taxing authorities at the time of the testator’s death and hence cannot be allowed to affect the valuation of the stock under the terms of the contract. For the reasons set forth most ably by Judge Froessel in the Aron case (supra, pp. 163-164) these objections are overruled. As he said: “ Clearly it makes no sense to charge the entire year’s burden of income taxes to the income of the last month preceding termination of the taxable year. On the contrary, sound accounting practice requires that each dollar of income as it is earned throughout the year should bear its proportionate share of the costs of the enterprise including the tax burden [citing cases] * * *. The mere fact that an item is not yet legally due and payable does not mean that it may be ignored as a liability (United States v. Anderson, 269 U. S. 422, 440-441; Fawcus Mach. Co. v. United States, 282 U. S. 375), nor does it mean that the item may not be included in a computation of book value ”.
Submit orders on notice appropriate to the rulings herein made in each of the proceedings now pending. The submission of a decree on the application for confirmation of the report of the accountant may be postponed until such time as. the adjusted audit as here directed is supplied.
Proceed accordingly.