Samuel GALEWITZ and Marian Galewitz, Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

No. 264, Docket 32814.

United States Court of Appeals Second Circuit.

Argued March 13, 1969.

Decided June 2, 1969.

Joseph Strum, New York City (Murray Kurman, New York City, on the brief), for appellees.

Before MOORE and FEINBERG, Circuit Judges, and McLEAN, District Judge.*

McLEAN, District Judge:

Samuel and Marian Galewitz filed a joint income tax return for the calendar year 1961 in which they took a deduction for legal fees in the amount of $11,-568.95 which Samuel Galewitz paid in that year to attorneys who had represented him in successfully defending an action brought against him and others in the Supreme Court, New York County, by his step-mother, Hannah Galewitz. The Commissioner disallowed the deduction on the ground that the fees constituted "expenses paid * * * in defending * * * title to property" within the meaning of Section 1.212–1(k) of the Treasury Regulations on Income Tax (1954 Code), 26 C.F.R. § 1.212–1(k), and hence constituted part of the cost of the property and not a deductible expense.[1] Accordingly, the Commissioner notified the taxpayers that determination of their income tax liability disclosed a deficiency in taxes of $7,466.70. The taxpayers thereupon petitioned the Tax Court for redetermination. The Tax Court held that the legal fees were properly deductible under Section 212(2) of the Internal Revenue Code of 1954, 26 U.S.C. § 212(2) as ordinary and necessary expenses paid "for the management, conservation, or maintenance of property

Mitchell Rogovin, Asst. Atty. Gen., Washington, D. C. (Lee A. Jackson, William A. Friedlander, Howard M. Koff, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant.

---

* Of the Southern District of New York, sitting by designation.

1. The full text of the regulation reads as follows:
   § 1.212–1.
   (k) Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered must be included in gross income), or in developing or improving property, consti-

tute a part of the cost of the property and are not deductible expenses. Attorneys' fees paid in a suit to quiet title to lands are not deductible; but if the suit is also to collect accrued rents thereon, that portion of such fees is deductible which is properly allocable to the services rendered in collecting such rents. Expenses paid or incurred in protecting or asserting one's right to property of a decedent as heir or legatee, or as beneficiary under a testamentary trust, are not deductible.

held for the production of income."[2] Accordingly, the Tax Court decided that there was no deficiency in tax.

■ Upon the facts disclosed by the record, we conclude that the tax treatment accorded this item by the Commissioner, rather than that adopted by the Tax Court, was correct. We therefore reverse the decision of the Tax Court.

The relevant facts are undisputed. They are embodied in a stipulation entered into by the parties in the Tax Court and in the findings of fact set forth in the opinion of the Supreme Court, New York County, which dismissed Hannah Galewitz' action after trial. They may be summarized as follows.

Jacob Galewitz, Samuel's father, married Hannah on November 30, 1931. It was a second marriage for each of them. Jacob had four children by his first wife, including Samuel and his sister Elsie, now Elsie Galewitz Schreiber. Jacob controlled Clinton Paper Corporation (Clinton). At about the time of his marriage to Hannah, Jacob organized Walter Peek Paper Corporation (Peek) to act as a sales agent for Clinton. The New York court found that Jacob had done this in order to provide income for Hannah, certain of her friends, and her first husband. Apparently the stock of Peek was originally issued to them.

By 1933 Peek was in serious financial difficulty. Its affairs were then liquidated. The New York court found that all of Peek's "outstanding shares were turned in by the stockholders," and that "full control was turned over" to Jacob. Peek ceased to do business and by July 1935 it had no assets. By 1938, however, it had taken a new lease on life as a real estate holding corporation. It has since prospered in that field and now has substantial assets.

On February 25, 1938, Peek issued ten shares of stock, which constituted all the stock which Peek then had or now has outstanding. One share was issued to Jacob, five to Samuel and four to Elsie. The parties stipulated that Samuel and Elsie paid full value for the shares issued to them. Samuel and Elsie were elected directors. Samuel was made chairman. He became active in the operation of the business. The business grew and dividends were paid on the stock.

Jacob died in 1950. His will was admitted to probate in the Surrogate's Court of New York County. It bequeathed to Hannah $2,500 and the income for life from one-third of his estate. Hannah was dissatisfied with the provision made for her. She embarked upon a course of litigation which continued for some years thereafter in the New York courts.

First she attempted to assert a widow's right of election under Section 18 of the New York Decedent Estate Law to take her intestate share of her husband's estate despite his will. The Surrogate, however, held that the will was sufficient to defeat a right of election. His decision was affirmed by the Appellate Division and in turn by the Court of Appeals. Matter of Galewitz' Estate, 3 Misc.2d 197, 148 N.Y.S.2d 823 (1955), affirmed, 3 A.D.2d 736, 163 N.Y.S.2d 937 (1st Dept.1957), affirmed, 5 N.Y.2d 725, 177 N.Y.S.2d 710 (1958).

While this proceeding was making its way up through the courts, Hannah began another action, this time in the Supreme Court, New York County. She eventually lost it. This is the action which gave rise to the legal fees with which we are concerned here.

In that action Hannah named as defendants Peek, the executors of Jacob's estate, and Samuel and Elsie individually. She based her claim upon the principle laid down in Newman v. Dore, 275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R.

---

2. Section 212 provides:
In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

\* \* \* \* \*
(2) for the management, conservation, or maintenance of property held for the production of income; \* \* \*

643 (1937). She claimed that the nine shares of Peek stock always belonged to Jacob, that the purported issuance of that stock to Samuel and Elsie was a transfer in form only, not in substance, and was "illusory," and that consequently, the stock formed part of Jacob's estate after his death and had to be taken into account in computing the one-third of his estate from which, under Jacob's will, Hannah was to enjoy the income. Her complaint alleged that Samuel and Elsie had "improperly, falsely and fraudulently claimed" to be the owners of the nine shares, and that the executors had "acquiesced" in their claims. She asked for a judgment setting aside the alleged transfer of the stock to Samuel and Elsie as void.

Samuel and Elsie attempted to secure a dismissal of the action without a trial, but their attempt was unsuccessful. The court held that the complaint stated a cause of action and that the statute of limitations was not a bar. Defendants' motion for summary judgment was denied. Galewitz v. Walter Peek Paper Corporation, 145 N.Y.S.2d 402 (N.Y.Co. 1955), affirmed, 3 A.D.2d 741, 161 N.Y.S.2d 566 (1st Dept.1957), leave to appeal denied, 3 A.D.2d 897, 163 N.Y. S.2d 363 (1957).

The action then went to trial on the merits. The trial court held that the issuance of the stock to Samuel and Elsie was not "illusory." In the course of its opinion, the court made some uncomplimentary remarks about Hannah, characterizing her testimony as "utterly incredible," and referring to her claim as "wholly without credible support in the record." The judgment for defendants entered upon the trial court's decision was affirmed on appeal. Galewitz v. Walter Peek Paper Corporation, 15 Misc. 2d 179, 182 N.Y.S.2d 750 (N.Y.Co.1958), affirmed, 9 A.D.2d 621, 191 N.Y.S.2d 359 (1st Dept.1959).

On these facts, the question before us is whether, in defending this action, Samuel was "defending title to property," i.e., his title to the Peek stock. If he was, then, under the regulation, his legal expenses paid in the defense are not deductible. It seems to us to be clear that this is precisely what Samuel was doing.

■ Indeed, the Tax Court recognized in its opinion that "the right of Samuel and Elsie, respectively, to keep the shares was in issue in the litigation," and that "Samuel was obliged to defend his title to 5 shares." Nevertheless, the Tax Court concluded that the legal expenses were deductible as ordinary and necessary expenses paid "for the conservation of property held for the production of income." It is apparent from the court's opinion that in reaching this conclusion, the Tax Court gave controlling weight to the fact that the New York courts had found Hannah's claim to be lacking in merit. The Tax Court held that since Hannah's efforts were "groundless," and since Samuel was merely "fend[ing] off an attack which was not bona fide," he was not defending his title to the stock within the meaning of the regulation.

In our view, this construction of the regulation is not permissible under its terms. The regulation has been in effect for years. This court has recently upheld its validity. Larchfield Corp. v. United States, 373 F.2d 159 (2d Cir. 1966). Its language is plain and unqualified. It draws no distinction between defenses of title against attacks which are not bona fide and defenses against attacks which are. If the taxpayer incurred expenses in defending his title, the expenses are not deductible, regardless of the nature of the attack.

Moreover, to read any such distinction into the regulation would render it unworkable. In the final analysis, all unsuccessful efforts to wrest from the taxpayer title to his property turn out to be groundless. The applicability of the regulation cannot depend upon how groundless they are. We perceive no way in which, as a practical matter, such an uncertain standard could be satisfactorily applied.

There are cases in other circuits which have held it to be immaterial that the

action which the taxpayer resisted was without merit. Safety Tube Corp. v. Commissioner, 168 F.2d 787 (6th Cir. 1948); Schwabacher v. Commissioner, 132 F.2d 516 (9th Cir. 1942). We are in accord with that view. Cf. American Dispenser Co. v. Commissioner of Internal Revenue, 396 F.2d 137 (2d Cir. 1968).

There are two other facts in this case which seem to have impressed the Tax Court but which we believe to be without critical significance. In the first place, it can make no difference that Hannah was seeking to recover the Peek stock, not for herself, but for Jacob's estate, in which she had an interest under the will. She was still trying to take the stock away from Samuel and he was still resisting that attempt. In the second place, it is not determinative that the stock produced income. If that fact alone were all-important, then Section 212 would cover every case and the regulation would become a dead letter.

The Tax Court relied upon this court's decision in Hochschild v. Commissioner of Internal Revenue, 161 F.2d 817 (2d Cir. 1947), as well as upon Sergievsky v. McNamara, 135 F.Supp. 233 (S.D.N.Y. 1955). *Hochschild* was criticized, at least inferentially, in *Larchfield*, 373 F.2d at 166. In any event, we consider it distinguishable from the present case. In *Hochschild* the taxpayer's legal expenses were incurred in the successful defense of a stockholder's derivative action which charged him with having violated his fiduciary obligation as a corporate officer. The stockholder plaintiff claimed that Hochschild had appropriated to himself certain stock which rightfully belonged to the corporation. Plaintiff sought to impress a trust upon the stock. He also asked for an accounting of all damages caused the corporation and all profits derived by Hochschild from his alleged breach of fiduciary duty. This court (Judge Frank dissenting) held that the legal expenses were deductible as

ordinary and necessary expenses of carrying on a business within Section 23(a) (1) of the 1939 Internal Revenue Code (now 26 U.S.C. § 162(a)). The court said in substance that Hochschild was engaged in business, that the action charged him with misconduct in the course of that business, and that plaintiff sought to compel him to account for that misconduct.

"He thereby but fended off an abortive attack upon the conduct of his business as a fiduciary and by freeing himself from liability to his corporation to account for such conduct put all of his property beyond the reach of his then accusers." 161 F.2d at 819.

*Sergievsky* presented the same underlying factual situation. It was concerned with the deductibility of litigation expenses incurred by Hochschild's legatees to whom he had bequeathed the same stock which was involved in *Hochschild v. Commissioner*. As in *Hochschild*, plaintiff in the action against the legatees sought both an accounting and the imposition of a constructive trust upon the stock. In holding that the expenses were deductible under Section 23(a) (2) of the 1939 Code (now 26 U.S.C. § 212(2)), the district court naturally followed this court's decision in *Hochschild*.

The difference between the *Hochschild* facts and the facts we are dealing with here seems to us to be manifest. Hannah did not sue on behalf of Peek. She did not charge Samuel with breach of his fiduciary duty as an officer of Peek. She sought no accounting of damages and profits. Her action was purely and simply an attempt to void Samuel's title to the stock on the ground that he had never obtained title, in substance, since the transfer to him was "illusory." [3]

Obviously, in every case a taxpayer who succeeds in retaining his property

---

3. The Tax Court also laid stress on *Willy Zietz*, 34 T.C. 369 (1960). This decision of course is not binding upon us. In any event, its facts, which were unusual and complicated, are sufficiently different to make the decision inapposite here. We consider it unnecessary to discuss the case in detail.

against an unjustified attack "conserves" it in a certain sense. But "conservation" must have a narrower meaning than this. The statute and the regulation exist side by side and it would make no sense to say that every case which falls within the regulation also comes within the statute. We recognize that cases may arise in which it may be difficult to draw the line between them. This does not appear to us to be such a case. If the regulation is to have any vitality, it must govern here.

The decision of the Tax Court is reversed.