T.C. Memo. 1998-161


UNITED STATES TAX COURT


JEAN W. LANGE AND JEANNE P. LANGE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3317-96.                    Filed May 5, 1998.


<u>David R. Rhein</u>, for petitioners.

<u>J. Anthony Hoefer</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FAY, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income taxes as follows:

| Year | Deficiency |
|------|------------|
| 1992 | $48,689 |
| 1993 | 19,490 |
| 1994 | 8,743 |

The sole issue for decision is whether petitioners are entitled to deductions under section 162 or section 212 for legal expenses paid during the years 1992, 1993, and 1994.[1]

FINDINGS OF FACT

Most of the facts have been stipulated and are so found. The stipulations of facts and attached exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioners resided in Sac City, Iowa.

Petitioner Jean Lange (hereinafter referred to as petitioner) and his brother, Elmer Lange (Elmer), acquired an 80-percent interest in Union State Bank (the Bank) in late 1979 or 1980. Later, the brothers formed Madison Holding Company (Madison) and exchanged the Bank stock (and the debt they had incurred in purchasing the Bank stock) for stock in Madison. While each brother had purchased an equal number of shares of the Bank stock, petitioner incurred $120,000 more debt than Elmer in

_____

[1]All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

acquiring the Bank stock.  To compensate for this disparity, Elmer received 1,200 more shares of Madison preferred stock than petitioner.  The Madison stock was issued as follows:

|          | Common Shares | Preferred Shares |
|----------|---------------|------------------|
| Elmer    | 1,648         | 15,216           |
| Petitioner | 1,648       | 14,016           |

The preferred stock provides for a 50¢ per share, non-cumulative, preferred dividend.  On dissolution, each share entitles the holder to receive a $100 liquidation preference over the common stock, but the holder is not entitled to receive proceeds in excess of the $100 preference.  Finally, the preferred stock is voting stock.

Despite the inequality in their ownership positions, Elmer and petitioner treated each other as equal partners.  When the Bank suffered financial reverses in the 1980's, petitioner and Elmer contributed equal amounts ($744,000 each) to Madison. These funds were used to strengthen the Bank financially. Petitioner was more involved with the Bank's daily operations, and Elmer acquiesced to petitioner's management decisions.  The record indicates that the brothers intended to equalize their respective ownership positions in Madison at some future time. None of the family members, other than the two brothers, was aware of the disparity in stock ownership.

In 1983, the brothers executed a buy/sell agreement to provide for the disposition of Madison stock upon the death of

either of them.  The agreement gave the surviving brother the right to purchase the common and preferred stock from the deceased brother's widow.  The buy/sell agreement was executed by both brothers and their respective spouses.

In 1985, Elmer tried to equalize ownership of the Madison preferred stock. His accountant informed him that, to equalize their ownership positions, Madison could issue 1,200 additional shares to petitioner or Elmer could sell 600 of his shares to petitioner. Petitioner and Elmer agreed that it would be easier to have Elmer sell 600 shares of his preferred stock to petitioner. This transaction never occurred, however, due to concerns over the Bank's financial stability.

Elmer died on May 6, 1990. Elmer's widow, Beth, was appointed executrix of his estate. Beth soon discovered the disparity in petitioner and Elmer's preferred stock ownership. After some discussions between the respective families, an agreement was drafted which acknowledged the disparity and provided for a transfer of 600 shares of Madison preferred stock to petitioner from Elmer's Estate in exchange for $60,000. This agreement was signed by petitioner and his family, but Elmer's heirs refused to sign. Shortly thereafter, Elmer's heirs expressed a desire to retain majority ownership in Madison.

When petitioner realized that Elmer's heirs intended to retain majority control, he became concerned that this would adversely impact the management of the Bank. In February 1991, petitioner passed a corporate resolution whereby Madison attempted to redeem 1,500 shares of preferred stock and 1,054

shares of common stock from Elmer's estate.  Later, petitioner appointed his son to be a director of Madison.  Petitioner and his son amended the resolution to increase, by 250 shares, the number of preferred shares that were to be redeemed by Madison.

On February 21, 1991, petitioner and his son held another directors' meeting.  At this meeting, they authorized the issuance of 2,000 shares of Madison common stock to petitioner in exchange for a reduction in Madison's debt owed to him.

Elmer's heirs filed a lawsuit in the Iowa District Court for Madison County, alleging petitioner had breached a fiduciary duty owed to Madison shareholders by authorizing the issuance of the 2,000 shares of common stock to himself, and by attempting to have Madison redeem the common and preferred stock from the heirs.  Petitioner counterclaimed, seeking various remedies

including specific performance of the redemption and the sale of 600 Madison preferred shares from Elmer's estate.[2]

---

[2]The counterclaims are as follows:

COUNTERCLAIMS

Defendants/Counterclaim Plaintiffs Jean W. Lange and Gene C. Lange [petitioners' son], for their counterclaims against Beth Thomas Lange, Mary Beth Williams, and Martha Jane Lange, state:

*      *      *      *      *      *      *

COUNT I:  DECLARATORY JUDGMENT

*      *      *      *      *      *      *

16.  A present controversy exists among the parties regarding the legal effect of certain actions taken by Madison Holding Co., the Estate of Elmer F. Lange, Beth Thomas Lange, Mary Beth Williams, Martha Jane Lange, Jean W. Lange, and Gene C. Lange, including but not limited to:

a.   whether the agreement for the sale of 600 shares of Madison Holding Co. preferred stock to Jean W. Lange is valid and enforceable;

b.   who owns the stock of Madison Holding Co. held by Elmer F. Lange before his death;

c.   whether the stock certificate forms signed by Beth Thomas Lange purportedly as President of Madison Holding Co. are valid;

d.   whether the noticed redemption by Madison Holding Co. of 1,054 common shares and 1,750 preferred shares is valid;

e.   whether the consideration for the 2,000 shares of common stock issued to Jean W. Lange of February 21, 1991 was adequate and whether said issuance was consistent with the rights of all concerned; and

f.   whether the bylaws of Madison Holding Co. create enforceable rights in favor of Madison Holding Co.

(continued...)

On October 1, 1992, the district court issued its opinion in

Lange v. Lange, Equity No. 23300.  This ruling was appealed to

the Iowa Supreme Court, which held that the agreement, whereby

Elmer's estate was to sell 600 shares to petitioner, should be

enforced.  The Iowa Supreme Court also held that the district

---

2(...continued)
    WHEREFORE, Jean W. Lange and Gene C. Lange pray
for a declaration that (i) the agreement for the sale
of 600 shares of Madison Holding Co. preferred stock is
valid and enforceable; (ii) the Estate of Elmer F.
Lange is and continues to be a stockholder of Madison
Holding Co., subject to the redemption by Madison
Holding Co. with respect to 1,054 common shares and
1,750 of the preferred shares, and further subject to
Jean W. Lange's contract rights with respect to an
additional 600 preferred shares; (iii) the stock
certificate forms signed by Beth Thomas Lange pur-
portedly as President of Madison Holding Co. are of no
force or effect; (iv) the noticed redemption of 1,054
common shares and 1,750 preferred shares is valid;
(v) the consideration for the 2,000 shares of common
stock was adequate and said issuance was consistent
with the rights of all concerned; and (vi) all the
rights of Madison Holding Co., Jean W. Lange, and Gene
C. Lange under the bylaws are valid and enforceable;
and such other further relief as may be equitable in
the premises; and for the costs of this action.
              COUNT II:   SPECIFIC PERFORMANCE

*      *      *      *      *      *      *

    WHEREFORE, Jean W. Lange and Gene C. Lange pray
for specific performance of the redemption of stock by
Madison Holding Co. from the Estate of Elmer F. Lange;
and further pray that counterclaim defendants Beth
Thomas Lange, Mary Beth Williams and Martha Jane Lange
be required to take all steps necessary to cause the
Estate of Elmer F. Lange to perform the agreement for
the sale [of] 600 shares of Madison Holding Co. pre-
ferred stock; and for such other further relief as may
be equitable in the premises; and for the costs of this
action.

court properly voided both petitioner's attempt to have Madison redeem the stock from Elmer's estate and his attempt to have Madison issue 2,000 shares of common stock to himself.[3]

Petitioner and his wife filed joint income tax returns for 1992, 1993, and 1994. In these returns, they claimed deductions for legal fees in the amounts of $150,877, $50,737, and $30,040, respectively. All of the legal fees related to the above litigation. Respondent determined that petitioner and his wife were not entitled to current deductions for the legal fees that they incurred.

OPINION

We must decide whether the legal fees paid by petitioner were deductible during the years at issue. Petitioner argues that the fees were properly deducted pursuant to section 162 or section 212. Section 162 allows a deduction for all "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Sec. 162(a). Section 212 allows a deduction for all "ordinary and necessary expenses paid or incurred during the taxable year--(1) for the production or collection of income". Sec. 212(1). Petitioner bears the burden of proving that he satisfies the requirements under section 162 or section 212. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

---

[3]See Lange v. Lange, 520 N.W.2d 113 (Iowa 1994).

Respondent argues that the deductibility of the legal fees is governed by section 263. Section 263 disallows deductions for capital expenditures. Legal expenses paid to defend or perfect title to property are capital expenditures and are not currently deductible. Woodward v. Commissioner, 397 U.S. 572, 575-576 (1970); Boagni v. Commissioner, 59 T.C. 708, 711-712 (1973).

We must look to the origin of the claim to decide whether the legal fees paid by petitioner are currently deductible. Woodward v. Commissioner, supra at 577-578. The origin-of-the-claim test requires us to examine the "origin" and "character" of the legal claim rather than the taxpayer's subjective purpose in filing the lawsuit. Id.; United States v. Gilmore, 372 U.S. 39, 49 (1963). In Gilmore the Supreme Court said:

> the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business" or "personal" and hence whether it is deductible or not * * * [United States v. Gilmore, supra at 49].

The origin of the claim is identified by analyzing all of the facts and circumstances surrounding the litigation. Id. at 47-48. If the origin of the claim involves the defense or protection of title to property, the legal fees are nondeductible capital expenditures. Brown v. United States, 526 F.2d 135, 138-139 (6th Cir. 1975); Boagni v. Commissioner, supra at 713. The

question to be answered is, out of what kind of transaction did the litigation arise. Boagni v. Commissioner, supra.

The facts surrounding the litigation between petitioner and Elmer's heirs are not in dispute. After his brother died, petitioner took various steps to protect his ownership of Madison stock and to acquire additional shares of such stock. Elmer's family resisted petitioner's efforts and filed suit against petitioner and his son. Petitioner counterclaimed, seeking a declaration that the attempted redemption from Elmer's estate and issuance of stock to petitioner were valid and seeking an order for specific performance of the agreement to sell 600 shares.

Petitioner argues that he undertook the litigation to protect his position at the Bank. Petitioner points to several of respondent's revenue rulings holding that litigation expenses incurred to defend a taxpayer's actions as an employee are deductible as ordinary and necessary expenses incurred in the conduct of a trade or business. See Rev. Rul. 74-394, 1974-2 C.B. 40; Rev. Rul. 71-470, 1971-2 C.B. 121. Petitioner contends the origin of the claim was the heirs' attempt to remove petitioner from his job at the Bank. Because petitioner filed his claims in part to protect his employment at the Bank, petitioner reasons that the legal fees he incurred are currently deductible. We disagree.

The litigation arose because petitioner caused Madison to issue additional shares of stock to himself, and he attempted to have Madison redeem shares of stock from Elmer's heirs.  Petitioner, in his counterclaim, sought to enforce an agreement to purchase 600 shares from Elmer's estate in order to equalize the stock ownership as between the families.  The claims have their origin in the protection, defense, and acquisition of petitioner's ownership interest in Madison stock.  While petitioner's purpose in undertaking the litigation might have included protecting his job, this is not determinative under the origin-of-the-claim test.  See Bradford v. Commissioner, 70 T.C. 584, 591 (1978); see also Mitchell v. Commissioner, T.C. Memo. 1994-237 (and cases cited therein), affd. 73 F.3d 628 (6th Cir. 1996).  Petitioner, through litigation, sought to establish his ownership of additional shares of Madison stock.  We conclude that the litigation costs were incurred to defend, protect, and acquire petitioner's title to the Madison stock and therefore constitute nondeductible capital expenditures which should be added to the basis of petitioner's Madison stock.  See Galewitz v. Commissioner, 411 F.2d 1374 (2d Cir. 1969), revg. 50 T.C. 104 (1968); Lin v. Commissioner, T.C. Memo. 1984-581.  Accordingly, we sustain respondent's determination in the notice of deficiency.

To reflect the foregoing,

Decision will be entered for respondent.