JANE K. NICKELL (now JANE K. JOHNSON), ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Nickell v. Commissioner
Docket Nos. 21317-81; 21318-81; 40343-86
United States Tax Court
T.C. Memo 1989-458; 1989 Tax Ct. Memo LEXIS 458; 57 T.C.M. (CCH) 1408; T.C.M. (RIA) 89458; August 28, 1989
*458 Paul E. Sullivan and Scott W. Dolson, for the petitioners. Jennifer C. Troutman, for the respondent. CLAPP
MEMORANDUM OPINION CLAPP, Judge: These cases are before the Court on remand from the Court of Appeals for the Sixth Circuit following appeal by petitioners from our opinion reported at T.C. Memo. 1985-302. In our original opinion, we did not allow any deductions for the legal fees that petitioners incurred in a dispute over title to certain stock. The Sixth Circuit remanded the cases to us for allocation of the legal fees between nondeductible expenses incurred for the defense or perfection of title and deductible expenses incurred for the collection of income. Nickell v. Commissioner, 831 F.2d 1265 (6th Cir. 1987), affg. in part and revg. and remanding in part a Memorandum Opinion of this Court. The cases on remand involve the 1977 taxable year for both Jane K. Nickell, now Jane K. Johnson (Johnson), and Joan D. Kincaid (Kincaid). The remanded cases (docket Nos. 21317-81 and 21318-81) have been consolidated with another case (docket No. 40343-86) involving the same issue for Johnson for 1980 and 1981. All *459 cases were submitted fully stipulated under Rule 122, Tax Court Rules of Practice and Procedure.
In 1973, petitioners granted various stock options to their father, Garvice D. Kincaid. One option was for the purchase of Kincaid's controlling stock interest in Lexington Finance Company (the finance company stock). Other options were for the purchase of stock that Kincaid and Johnson owned in various banks (the bank stock). Their father died on November 21, 1975, without having exercised any of the options. On November 11, 1976, Kincaid informed the executor of her father's estate that she was cancelling the finance company stock option. On December 1, 1976, the executor notified Kincaid of its election to exercise that option and tendered payment, which Kincaid refused. On January 14, 1977 , the executor completed a blank stock power which Kincaid had given to her father and transferred the stock to itself. The finance company issued the executor a new certificate for all of Kincaid's finance company shares. Kincaid immediately instituted an action, requesting that the finance company option be declared null and void and that she be declared the owner of the stock. Kincaid *460 ultimately won the suit and recovered her stock in 1981. She also recovered $ 108,912 in dividends and interest totalling $ 20,845.73. Kincaid's finance company stock had a fair market value of $ 363,040 in March 1973. On November 11, 1976, petitioners notified the executor of their father's estate that they were cancelling all the bank stock options and demanded return of the bank stock certificates. . The executor refused to return the stock. On January 27, 1977, petitioners instituted separate actions requesting that the options be declared null and void and that they be declared owners of the stock. On July 22, 1977, the executor attempted to exercise options on some of petitioners' stock in the Bank of Danville and Peoples Commercial Bank. The options on the other bank stock had expired on June 28, 1977. On October 25, 1979, summary judgment was granted in favor of the executor, declaring it the owner of the Bank of Danville and Peoples Commercial Bank stock. On December 4, 1979, the court extended its judgment to the unexercised options on the Bank of Danville and Peoples Commercial Bank stock, holding that those options were binding. An appellate court affirmed the bank *461 stock judgment on December 19, 1980. During the pendency of the litigation, petitioners received payments of the following dividends on their bank stock: Johnson
1977
1978
1979
1980
1981
Bank of Danville
$ 13,792
$ 13,792
$ 13,792
$ 13,792
$ 2,498
Bank of Williamsburg
3,525
0
0
0
0
Corbin Deposit Bank
0
0
0
0
0
Deposit Bank of Carlisle
620
640
720
880
960
First National Bank,
Nicholasville
1,505
0
0
0
0
Peoples Commercial Bank
26,588
26,588
19,941
13,294
2,344
Marathon Bank
0
0
0
0
0
TOTAL
$ 46,030
$ 41,020
$ 34,453
$ 27,966
$ 5,802
Kincaid
Bank of Danville
$  3,800
$  3,800
$  3,800
$  3,800
0
Deposit Bank of Carlisle
620
640
720
880
$   960
First National Bank,
Nicholasville
1,505
0
0
0
0
Peoples Commercial Bank
7,836
7,836
5,877
3,918
0
Marathon Bank
0
0
0
0
0
First State Bank, Manchester
12,450
0
0
0
0
TOTAL
$ 26,211
$ 12,276
$ 10,397
$ 8,598
$   960
The bank stock had the following values at the indicated times: Johnson
No. of
Value
Valuation
Shares
Per Share
Value
Method & Date
Bank of Danville
13,792
$ 27.71
$ 382,130.32 Book Value on 3/11/81
Bank of Williamsburg
4,700
64.00
300,800.00 Sale Price on 12/3/77
Corbin Deposit Bank
875
29.00
25,375.00 Sale Price on 2/10/77
Deposit Bank of
Carlisle
40
50.00
2,000.00 Par Value on 4/19/73
First National Bank,
Nicholasville
3,009
45.00
135,405.00 Sale Price on 8/15/77
Peoples Commercial
Bank
13,294
34.50
458,643.00 Book Value on 3/11/81
Marathon Bank
4,626
77.00
356,202.00 Sale Price on 12/30/77
Total
$ 1,660,555.32
Kincaid
Bank of Danville
3,800
$ 27.71
$ 105,283.33 Book Value on 3/11/81
Deposit Bank of
Carlisle
40
50.00
2,000.00 Par Value on 4/19/73
First National Bank,
Nicholasville
3,010
45.00
135,450.00 Sale Price on 8/15/77
Peoples Commercial
Bank
3,918
34.50
135,197.33 Book Value on 3/11/81
Marathon Bank
4,626
77.00
356,202.00 Sale Price on 12/30/77
First State Bank,
Manchester
24,900
42.00
1,045,800.00 Sale Price on 8/15/77
Total
$ 1,779,932.66
*462 We must allocate the following legal expenses between nondeductible expenses incurred for the defense or perfection of title and deductible expenses incurred for the collection of income: Johnson
1977
1980
1981
- bank stock options
55,980.14
7,793.86
37.01
Kincaid
- finance company stock option
58,155.82
--
--
- bank stock options
752.24
--
--
The parties are in general agreement that the deductible proportion of the litigation fees in each action will equal the ratio of the value of the income items at issue in that action to the value of the combined capital and income items at issue in that action. Helvering v. Stormfeltz, 142 F.2d 982, 985 (8th Cir. 1944); Kelly v. Commissioner, 23 T.C. 682, 688-690 (1955), affd. 228 F.2d 512(7th Cir. 1956). The parties disagree, however, on several specific issues. These issues are (1) whether petitioners may deduct any portion of the legal fees allocable to the bank stock actions when no income was recovered in those actions, (2) whether the allocation ratio used for one year's deduction should take into account income attributable to *463 other years, (3) whether for purposes of the allocation ratio the value of the capital items at issue was total stock value or was total stock value minus option price, and (4) whether the bank stock whose options expired in 1977 should be given the same weight in the allocation ratio as the other bank stock. None of these issues may be resolved clearly in favor of one party over the other. Rather, in each instance, there are some good arguments and some problems on each side. Petitioners bear the burden of proof on all issues. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering, 290 U.S. 111 (1933). First, respondent argues that petitioners may not deduct any legal fees incurred in the bank stock action because no income was recovered in that action. Petitioners argue the opposite. Both respondent and petitioners find support for their positions in the Sixth Circuit opinion. Petitioners point out that the Sixth Circuit applied an origin of the claim test, saying that the "origin of taxpayers' claims was an attempt to collect income precisely *464 to the extent that stock dividends and interest were recoverable in their suit." Nickell v. Commissioner, 831 F.2d at 1275-1276. Petitioners emphasize the Sixth Circuit's use of the word "recoverable" and point out that income was recoverable in the bank stock litigation. Respondent disagrees and points out that immediately after referring to "recoverable" income the Sixth Circuit said that "the best objective evidence of a concern over income * * * is the amounts of income actually recovered." 831 F.2d at 1276. Respondent argues that this language indicates legal fees should be deductible only to the extent that income actually is recovered. Although the issue is not clear, we lean towards the view that the Sixth Circuit only means that income actually recovered is merely evidence that petitioners were concerned with recovering income. Once petitioners establish that they were concerned with recovering income, the Sixth Circuit would allow them to deduct all litigation fees allocable to recoverable income. Such a view is consistent with Hallam v. Commissioner, T.C. Memo. 1983-384, in which we held that the portion of legal fees *465 allocable to an attempted recovery of interest may be deducted while the suit is pending. Furthermore, it appears that petitioners did in fact receive and keep all dividends during the pendency of the suit. Dividends began going to the executor only after the court declared that the executor had title to the bank stock. Second, the parties agree that in the finance company stock action the deductible portion of each year's litigation fees should be determined by an allocation ratio which takes into account all of the income recovered at the end of the action. Such an allocation follows that in Spangler v. Commissioner, T.C. Memo. 1961-341, affd. 323 F.2d 913 (9th Cir. 1963). The parties disagree, however, about the allocation method that should be used in the bank stock action. Petitioners would base each year's deduction upon an allocation ratio which takes into account all of the income recoverable during the pendency of the suit, while respondent would base each year's deduction upon an allocation ratio which takes into account only the income at issue in that year. Respondent does not explain why we should look to all income in the finance *466 company stock action but only to a year's income in the bank stock actions. Accordingly, petitioners seem to have the stronger argument on this issue. Third, petitioners argue that their claims originated in an attempt to recover the difference between the total value of the stock and the option price because that is the amount they would gain by winning rather than losing the actions. Accordingly, they suggest that the value of the capital items used in the allocation ratio should equal the difference between the total value of the stock and the option price. By contrast, respondent argues that the allocation ratio should be based upon the total value of the stock because the parties were attempting to recover the stock, not the monetary difference between the stock value and the option price. We believe that respondent has the stronger argument on this issue. First, petitioners bear the burden of proving that the origin of their claims was a monetary recovery rather than recovery of title, yet they have offered no evidence supporting their position. They sued for the recovery of their stock, not for the monetary difference between the stock value and the option price. It is *467 clear from the various pleadings in the finance company stock action that a principal motivation in that action was the desire to regain control of the finance company. Second, petitioners appear to argue that the capital value should exclude the option price because the option price would be received in any event, but that the income value should include the income which would be received in any event. If the focus is on the amount that petitioners would gain by winning rather than losing the action, we would think the income figure should equal the difference between the income recoverable if petitioners win and the income received if petitioners lose. We note that petitioners lost the bank stock actions, yet kept all dividends paid on the bank stock. Thus, the difference between the income recoverable if petitioners had won those actions, and the income actually received by petitioners when they lost, would appear to be zero. Accordingly, if petitioners desire the capital value to be the difference between the total value of the stock and option price, it would appear that the income figure in the bank stock actions should be zero. Such an income figure would mean, of course, *468 that petitioners could deduct none of the litigation fees they incurred in the bank stock actions. Third, petitioners argue that their suggested allocation was followed in Spangler, in which the taxpayers attempted to recover certain stock which they had been induced to sell at a fraudulently low price. In Spangler, however, there was a monetary recovery, and neither party suggested that the allocation should be based on the total value of the stock rather than on the amount of the recovery. Thus, Spangler is inapplicable to the instant case. Fourth, the options on certain bank stock expired in 1977, mooting the legal issues regarding that stock. Petitioners accordingly argue that the value of that bank stock should be weighted less heavily in the allocation ratio than the value of the other bank stocks. By contrast, respondent would include the value of all of the stock for purposes of the allocation for each year. We conclude that petitioners have the best of this issue. Litigation fees should not be allocated to the resolution of a moot legal issue. Respondent, but not *469 petitioners, has proposed stock values to be used in the calculation of the allocation ratio. These reflect book values, sales prices, and par value on various dates. Petitioners object to respondent's proposed values, primarily because they reflect values at different times and often were determined indirectly from the available evidence. Petitioners, however, suggest no other values. They devote their energies to establishing option values based on various documents that are not in the record. Normally, petitioners would have the burden of proof and, having failed to carry it, we would accept respondent's values. However, at trial apparently neither party anticipated that there would be an allocation of legal fees and, accordingly, neither party made an effort to introduce evidence of the appropriate allocation. Under these circumstances, in our order of June 16, 1988, we offered the parties an opportunity to introduce further evidence. However, respondent has not requested such an opportunity, and petitioners state that no further evidence need be presented. Accordingly, we adopt respondent's values which we have set out above. We note that the determination of legal fees *470 is not an exact science. Many factors come into play, including the time spent, the difficulty of the issue, the novelty of the issue, and the results achieved. The allocation of a legal fee between various elements of the same legal action, such as we are being asked to do in this case, is likewise something that cannot be determined with mathematical exactitude. In this case, the parties have agreed to an allocation of legal fees between the finance company stock action and the bank stock action and between Kincaid and Johnson. This allocation would seem to bear no relation to stock values or income or anything else in the record and would appear to be quite arbitrary. The Court is somewhat at a loss to understand why the parties could not use the same crystal ball to make the allocations which we are now being asked to make. After due consideration of the entire record, which has many frustrating gaps, and taking into account the various arguments of the parties on brief which have been discussed above and again noting the mathematical inexactitude of this inquiry, and relying to some extent upon our own experience in dealing with the objective and subjective factors which *471 must be taken into account in determining legal fees, we conclude that 25 percent of the legal fees paid in connection with the litigation involving the finance company stock and 20 percent of the legal fees paid in connection with the litigation involving the bank stocks are deductible as expenses incurred for the collection of income, and the balance of the legal fees are not deductible being expenses incurred for the defense or perfection of title. Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Joan D. Kincaid, docket No. 21318-81; J. Wesley Johnson and Jane K. Johnson, docket No. 40343-86.↩